## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| HATCHER INVESTMENTS, LLC, individually and on behalf of all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No: _____ |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| BELFOR USA GROUP, INC. d/b/a BELFOR PROPERTY RESTORATION, | ) ) ) ) | |
| **Serve Registered Agent:** 40600 Ann Arbor Rd. E. Ste. 201 Plymouth, MI 48170 | ) ) ) ) | |
| Defendant. | | |

## PLAINTIFF'S CLASS ACTION COMPLAINT

Plaintiff Hatcher Investments, LLC ("Plaintiff" or "Hatcher"), individually and on behalf of all others similarly situated, for its Complaint against Defendant Belfor USA Group, Inc. d/b/a Belfor Property Restoration ("Defendant" or "Belfor"), states and alleges as follows:

## INTRODUCTION

1. Defendant provides integrated disaster recovery and property restoration services for damages caused by fire, water, wind, or other catastrophes throughout the United States.

2.      Even though its customers' homes and businesses have been destroyed by devastating losses, Defendant overcharges them – up to three to four times more than it pays - for equipment rentals it uses to restore their property.

3.      Plaintiff, whose building was partially destroyed and business was devastated when a neighboring building collapsed, brings this case as a class action to recover compensatory and punitive damages owed to itself and similarly situated customers of Defendant.

**PARTIES**

4.      Plaintiff Hatcher Investments, LLC is a limited liability company organized in Missouri with its principal place of business in Liberty, Clay County, Missouri. Its sole member, Dan Hatcher, is domiciled in Cass County, Missouri and thus a Missouri citizen.

5.      Defendant Belfor USA Group, Inc. d/b/a Belfor Property Restoration is a Michigan corporation with its principal place of business in Birmingham, Michigan. It is also registered to do business in Missouri.

6.      Belfor may be served through its registered agent at 40600 Ann Arbor Rd. E., Ste. 201, Plymouth, MI, 48170.

## JURISDICTION AND VENUE

7.     This Court has personal jurisdiction over Defendant because its principal place of business is in Michigan and it does significant business in Michigan.

8.     Subject-matter jurisdiction is proper pursuant to 28 U.S.C. § 1332(a) because Plaintiff and its sole member are residents of Missouri, Defendant is a resident of Michigan, and the amount in controversy exceeds $75,000.00.

9.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant is a resident of this District.

## ALLEGATIONS COMMON TO ALL COUNTS

10.     On its website, Defendant holds itself out as "the North American leader in integrated disaster recovery and property restoration services" and "the contractor of choice for damages caused by fire, water, wind or other catastrophes." *See* https://www.belfor.com/en/us/about-us/our-company.

11.     Defendant has more than 100 full-service offices in the United States. *Id*.; *see also* https://www.belfor.com/en/us/belfor-usa-offices.

12.     Although Defendant claims that its culture is built upon integrity, loyalty, and commitment, *see* https://www.belfor.com/en/us/about-us/mission-values, it has a practice of overcharging its customers for the equipment rentals that it uses to restore their property.

13. Plaintiff is the owner of a building and real estate located at 110-112 E. Kansas in downtown Liberty, Missouri (the "Building").

14. As landlord, Plaintiff entered into a lease agreement with Rock and Run Brewery and Pub, LLC ("R&R") to operate a microbrewery and restaurant at the Building.

15. In 2013, the Building underwent substantial renovations so that R&R could operate as a microbrewery and restaurant.

16. During this time, R&R acquired an insurance policy on the Building from Illinois Casualty Company ("ICC") with Plaintiff listed as a named insured.

17. On May 3, 2016, a neighboring building, the Ethan Allen Building, collapsed and caused the partial destruction of the Building, which ceased all operations at R&R.

18. Defendant assumed the role of general contractor for construction efforts to secure the collapsed site and neighboring buildings.

19. On or around May 3, 2016, Plaintiff entered into a contract with Defendant, which authorized the company to provide all labor, equipment and materials that were required to properly repair the Building.

20. Defendant agreed to perform all repair work in a good and workmanlike manner in accordance with their General Conditions.

21.     Defendant also agreed that all insurance work it performed was subject to the terms of the insured's policy of insurance, which sets the scope and price of the work based upon industry standards.

22.     Pursuant to the contract, all uninsured work performed became the responsibility of Plaintiff.

23.     Demolishing the Ethan Allen Building and stabilizing the neighboring buildings, including Plaintiff's Building, required the use of interior shoring equipment, which Defendant rented from an equipment contractor.

24.     Defendant rented the shoring equipment for $3,125.00 per month, as reflected by invoices from the equipment contractor to Defendant.

25.     Defendant turned around and billed Plaintiff $9,500.00 per month for use of this shoring equipment - more than three times the amount that Defendant paid the equipment contractor.

26.     In addition, Defendant charged Plaintiff "profit and overhead" for a cumulative amount of 20% of the shoring equipment rental, meaning Defendant billed Plaintiff a combined $11,400.00 per month for use of the equipment – nearly four times the amount that Defendant paid for it.

27.     $11,400.00 per month to rent shoring equipment is not standard industry pricing.

28. The $11,400.00 per month charge did not include labor, which Defendant billed Plaintiff separately

29. Defendant provided the exact service to Plaintiff that the equipment contractor provided to Defendant, only Defendant charged Plaintiff more than triple, and close to quadruple, for the exact service.

30. Plaintiff would not have agreed to pay triple the price for renting shoring equipment if Defendant had disclosed its pricing before the work was completed and invoices were sent.

31. Defendant did not disclose to Plaintiff that it only paid the equipment provider $3,125.00 per month for the shoring equipment rental.

32. On multiple occasions, Plaintiff requested documentation relating to the shoring equipment rental, but Defendant refused to provide any invoices.

33. Plaintiff did not become aware of Defendant's significant overcharging until Rodney Todd, a regional manager and Kansas City branch manager for Defendant, was deposed in October 2018 in a lawsuit that Plaintiff and R&R filed against ICC for insurance proceeds and others for damage to the Building.

34. It is not common industry practice to upcharge customers for rental equipment in this manner.

35. Defendant's pattern and practice of significantly upcharging equipment rentals runs afoul of industry standards.

36.     Upon information and belief, Defendant has charged all its customers this way for equipment rentals during the class period. Defendant unreasonably profits by renting equipment for a certain price, then turning around and charging its customers significantly more money than it paid to rent the exact same equipment. Defendant then adds a profit and overhead charge. Because Defendant charges separately for labor, there is no justification for these significant upcharges.

37.     Defendant has a pattern and practice of abusing customers' trust by promising to abide by industry standards for billing, then charging prices that demonstrate that Defendant never intended to do so.

38.     Customers throughout Missouri and the nation have been harmed by this practice and have paid significantly more than industry standard pricing for equipment rentals.

## CLASS ALLEGATIONS

39.     Plaintiff, on behalf of itself, the Nationwide Class, and the Missouri Subclass, restates and re-alleges the above paragraphs as if fully set forth herein.

40.     Plaintiff, in accordance with Rule 23 of the Federal Rules of Civil Procedure, brings this action on behalf of itself, a Nationwide Class of similarly situated customers, and a Missouri Subclass of similarly situated customers, defined as follows:

> *All persons and other entities who were invoiced for equipment rentals by Defendant on or after May 3, 2016.*

7

(a) *Subclass I: All persons and other entities who were invoiced for equipment rentals by Defendant in Missouri on or after May 3, 2016.*

41.    <u>Class Period:</u>  The class period is May 3, 2016 through present.

42.    <u>Exclusions:</u>   Excluded from the Nationwide Class and the Missouri Subclass are:

 a.  Any judge presiding over this action and the family members of any judge presiding over this action

 b.  Defendant, its subsidiaries, its parents, its successors, its predecessors, any other entity in which Defendant or its parents have a controlling interest, and current or former offices and directors of Defendant, its subsidiaries, its parents, its successors, its predecessors, any other entity in which Defendant or its parents have a controlling interest;

 c.  Employees who have or had a managerial responsibility on behalf of Defendant, whose act or omission in this matter may be imputed to Defendant for purposes of civil or criminal liability, or whose statement may constitute an admission on the part of Defendant;

 d.  The attorneys working on Plaintiff's claims; and

 e.  Legal representatives, successors, or assigns of any such excluded persons.

8

43.  Numerosity:  Upon information and belief, the Nationwide Class Members include thousands of customers, making their individual joinder impracticable. The Missouri Subclass itself includes thousands of customers, as Defendant has Kansas City and St. Louis branches that provide services throughout Missouri and have for the entirety of the Class Period.

44.  Common Questions of Law or Fact:  There are numerous questions of law or fact common to the Nationwide Class and the Missouri Subclass, including, but not limited to:

a.  Whether Defendant improperly upcharged for equipment rentals;

b.  Whether Defendant comported with industry standards in charging for equipment rentals;

c.  Whether Defendant acted in good faith in setting the prices for its services;

d.  Whether Defendant concealed its billing practices before completing the work and sending invoices to customers;

e.  Whether Defendant's improper upcharges led to injuries that were suffered by members of the Nationwide Class and Missouri Subclass.

45.     Typicality:  A class action is appropriate because Plaintiff's claims are typical of the claims of the Nationwide Class and the Missouri Subclass in that the Plaintiff was charged for equipment rented by Defendant at a substantially higher rate than what it paid to rent the exact same equipment.

46.     Adequacy of Class Representative:  Plaintiff has pledged to protect the interests of the Nationwide Class and the Missouri Subclass and has been fairly chosen to do so. Plaintiff's interests do not conflict with the interests of the Nationwide Class Members and Missouri Subclass it seeks to represent.

47.     Adequacy of Class Counsel:  Plaintiff's counsel has litigated and certified a substantial number of class action cases.

48.     A class action is appropriate because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members and establish incompatible standards of conduct.

49.     A class action is appropriate because Plaintiff has acted on grounds generally applicable to the Nationwide Class and Missouri Subclass, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Nationwide Class and Missouri Subclass as a whole.

50.     A class action is appropriate since questions of law or fact common to Nationwide Class and Missouri Subclass Members predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

51.     Class treatment will conserve the resources of the courts and litigants, be mindful of judicial economy, and promote efficient adjudication of the Nationwide Class Members' and Missouri Subclass Members' claims.

## COUNT I- BREACH OF CONTRACT

52.     Plaintiff, on behalf of itself, the Nationwide Class, and the Missouri Subclass, restates and re-alleges the above paragraphs as if fully set forth in this cause of action.

53.     Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members entered into Contracts with Defendant, whereby Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members authorized Defendant to repair real property or structures in exchange for either insurance proceeds or proceeds from the property owner, to the extent uninsured work existed.

54.     In doing so, Defendant agreed that the scope and price of its work would be based upon industry standards.

55.     Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members fulfilled their contractual obligations by authorizing Defendant to do work and promising to pay for work that was done and charged pursuant to industry standards.

56.     Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members fulfilled their contractual obligations by paying Defendant for the work that was done and charged pursuant to industry standards.

57.     Defendant breached its contracts with Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members by charging Plaintiff and Class Members at a rate not commensurate with industry standards. Specifically, Defendant significantly and unreasonably upcharged Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members for the cost of equipment rental without being forthcoming as to the expected costs, then further charged Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members for profit and overhead.

58.     Defendant received and retained payment, both from insurance companies and property owners, without providing the corresponding benefits to Plaintiff, the Nationwide Class, and the Missouri Subclass.

59.     Defendant was required to perform under the contracts, and nothing excused its performance or rendered its performance impossible.

60.     As a direct and proximate result of Defendant's breaches of contract, Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members have been harmed by significantly overpaying for the exact same services Defendant acquired for a much lower price and by causing Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members to reach policy limits and incur uninsured expenses that would have otherwise been insured.

WHEREFORE, Plaintiff prays on behalf of itself and all other Nationwide Class Members and Missouri Subclass Members for a judgment in favor of the Nationwide Class and Missouri Subclass and against Defendant in an amount as is fair and reasonable; an award of reasonable attorneys' fees, costs, and expenses; pre- and post-judgment interest; injunctive relief as permitted by law and equity; and any other relief the Court deems just and proper.

## COUNT II - BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

61.     Plaintiff, on behalf of itself and the Nationwide Class and the Missouri Subclass, restates and re-alleges the above paragraphs as if fully set forth herein in this cause of action.

62.     By significantly upcharging the cost of its equipment rentals and depriving Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members of prices that conformed with industry standards, in addition to charging Plaintiff, the Nationwide Class, and Missouri Subclass for profit and overhead, Defendant breached the implied covenant of good faith and fair dealing that is present in every contract.

63.     Defendant had a duty to cooperate with Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members to enable performance and achievement of the expected benefits of their contracts.

64.     Defendant acted and exercised judgment in such a manner that evaded the spirit of the contracts by denying Plaintiff, the Nationwide Class, and the Missouri Subclass the expected benefit of the agreements and actively concealing its pricing information.

65.     In breaching the implied covenant of good faith and fair dealing, set forth above, Defendant acted to deny Plaintiff, the Nationwide Class, and the Missouri Subclass the expected benefit of their agreements, which was to have their real property or structures repaired at a price commensurate with industry standards.

66. There was no provision in the contracts signed by Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members that allowed Defendant to significantly upcharge for equipment rentals.

67. Defendant knew that Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members would expect it to charge at industry standards for equipment rental.

68. Defendant acted in bad faith by abusing the trust placed in it by Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members.

69. Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members were damaged by Defendant's breach of the implied covenant of good faith and fair dealing since they paid significantly more for a service than they would have had Defendant used industry standards for billing.

WHEREFORE, Plaintiff prays on behalf of itself and all other Nationwide Class Members and Missouri Subclass Members for a judgment in favor of the Nationwide Class and Missouri Subclass and against Defendant in an amount as is fair and reasonable; an award of reasonable attorneys' fees, costs, and expenses; pre- and post-judgment interest; injunctive relief as permitted by law and equity; and any other relief the Court deems just and proper.

## COUNT III- UNJUST ENRICHMENT

70.     Plaintiff, on behalf of itself and the Nationwide Class and Missouri Subclass, restates and re-alleges the above paragraphs as if fully set forth in this cause of action.

71.     Defendant received substantial benefits from Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members in the form of insurance proceeds and proceeds from property owners, to the extent uninsured work existed.

72.     Defendant knowingly accepted the benefits that were conferred by Plaintiff, Nationwide Class Members, and Missouri Subclass Members.

73.     In significantly upcharging for equipment rentals, Defendant knew or should have known it was providing significantly less value than prices it expected Plaintiff, Nationwide Class Members, and Missouri Subclass Members to pay.

74.     Defendant knew or should have known that it paid at or about industry standard to rent the equipment from equipment providers, but that it did not charge the industry standard in billing the use of that same equipment when Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members engaged Defendant to repair real property and structures. Rather, Defendant significantly upcharged Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members for equipment rentals and still charged Plaintiff, the Nationwide Class, and Missouri Subclass an additional percentage for profit and overhead.

75.    It would be inequitable and unjust for Defendant not to reimburse or refund Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members for the difference in the price it charged them for equipment rental and the price that it should have charged them using industry standards.

76.    Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members are entitled to restitution of the amounts wrongfully collected and improperly retained by Defendant.

77.    Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members seek the institution of a constructive trust from which Plaintiff, Nationwide Class Members, and Missouri Subclass Members may seek restitution.

WHEREFORE, Plaintiff prays on behalf of himself and all other Nationwide Class Members and Missouri Subclass Members for a judgment in favor of the Nationwide Class and Missouri Subclass and against Defendant in such amount as is fair and reasonable; an award of reasonable attorneys' fees, costs, and expenses; pre- and post-judgment interest; injunctive relief as permitted by law and equity; and any other relief the Court deems just and proper.

## COUNT IV- FRAUDULENT NONDISCLOSURE

78.    Plaintiff, on behalf of itself and the Nationwide Class and Missouri Subclass, restates and re-alleges the above paragraphs as if fully set forth in this cause of action.

79.     Defendant did not disclose to Plaintiff, the Nationwide Class, and Missouri Subclass that it significantly upcharged for equipment rentals.

80.     Defendant did not disclose to Plaintiff, Nationwide Class Members, and Missouri Subclass Members that it rented equipment for a significantly less amount than it charged Plaintiff, the Nationwide Class, and the Missouri Subclass to rent that exact same equipment.

81.     Unlike standard fraud, the concept of fraud liability based upon nondisclosure couches reliance in terms of the availability of the information to the plaintiff and the its diligence. *Keefhaver v. Kimbrell*, 58 S.W.3d 54, 60 (Mo. Ct. App. 2001). A plaintiff asserting fraud must show that undisclosed information was beyond reasonable reach and not discoverable in the exercise of reasonable diligence. *Id.*

82.     Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members lacked the ability to learn the truth, as the significant amount that Defendant upcharged Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members for equipment rentals and the fact that Defendant rented equipment for a significantly less amount than it charged Plaintiff and the Class Members to rent that exact same equipment was solely within its control. Additionally, the fact that Defendant charged an addition percentage for profit and overhead made Plaintiff, the Nationwide Class Members, and the Missouri Subclass

Members assume that Defendant did not upcharge for equipment rental prior to application of the profit and overhead.

83.     The     fact     that     Defendant     significantly     upcharged     Plaintiff, the Nationwide Class, and the Missouri Subclass for equipment rentals and the fact that Defendant rented equipment for a significantly less amount than it charged Plaintiff, Nationwide Class Members, and Missouri Subclass Members to rent that exact same equipment was particularly within the knowledge of Defendant.

84.     The cost of equipment rentals was a material part of the services Defendant provided to Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members.

85.     Defendant knew or should have known that it significantly upcharged for equipment rentals and that it rented the exact same equipment for a significantly less amount than it charged its customers. In fact, Defendant actively concealed such information despite Plaintiff's diligence to receive the information.

86.     Defendant's nondisclosures were beyond Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members' reasonable reach, were not easily ascertainable, and could not have been discovered with the exercise of reasonable diligence.

87.    It would be necessary for Plaintiff, Nationwide Class Members, and Missouri Subclass Members to employ a third person to make an examination in order to discover the truth about Defendant's billing practices because of Plaintiff, Nationwide Class Members, and Missouri Subclass Members' lack of access to Defendant's billing practices.

88.    The employment of an expert would be necessary to inform Plaintiff, Nationwide Class Members, and Missouri Subclass Members whether they were actually being billed pursuant to industry standards.

89.    Defendant had superior information about its billing practices that were not reasonably available to Plaintiff, Nationwide Class Members, and Missouri Subclass Members, and thus had a duty to provide them accurate, complete information as to how they would be billed.

90.    Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members were entitled to rely on Defendant's nondisclosures and had the right to rely on its nondisclosures.

91.    Plaintiff, the Nationwide Class Members, and the Missouri Subclass Members were damaged by Defendant's failures to disclose that it significantly upcharged for equipment rentals, that it rented equipment for a significantly less amount than it charged Plaintiff, the Nationwide Class Members, and the Missouri

Subclass Members to rent that exact same equipment by paying exorbinant costs for such rentals, and that it added an additional profit and overhead charge on top.

92.     In concealing and not disclosing that it significantly upcharged for equipment rentals, rented the equipment for significantly less than it charged Plaintiff, the Nationwide Class, and the Missouri Subclass to rent that exact same equipment, and added a profit and overhead charge on top, Defendant acted in a manner warranting punitive damages to punish its conduct and to deter similar future conduct by Defendant or others.

WHEREFORE, Plaintiff prays on behalf of itself and all other Nationwide Class Members and Missouri Subclass Members for a judgment in favor of the Nationwide Class and the Missouri Subclass and against Defendant in such amount as is fair and reasonable; punitive damages in an amount to punish Defendant and deter others from like conduct; an award of reasonable attorneys' fees, costs, and expenses; pre- and post-judgment interest; injunctive relief as permitted by law and equity; and any other relief the Court deems just and proper.

**PLAINTIFF RESPECTFULLY REQUESTS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**

Dated: May 3, 2021                              Respectfully submitted,

ADAM G. TAUB & ASSOCIATES
CONSUMER LAW GROUP, PLC

By: _/s/ Adam G. Taub_
Adam G. Taub (P48703)
Attorney for Plaintiff
17200 West 10 Mile Rd. Suite 200
Southfield, MI 48075
Phone: (248) 746-3790
Email: adamgtaub@clgplc.net

Jack D. McInnes (MO #56904)
MCINNES LAW LLC
1900 West 75th Street, Suite 220
Prairie Village, Kansas 66208
Telephone: (913) 220-2488
Facsimile: (913) 347-7333
jack@mcinnes-law.com

A. Scott Waddell (MO #53900)
WADDELL LAW FIRM LLC
1900 West 75th Street, Suite 220
Prairie Village, Kansas 66208
Telephone: (816) 399-5510
Facsimile: (816) 221-2508
scott@aswlawfirm.com

ATTORNEYS FOR PLAINTIFF